IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>ALFREDO ORTIZ-ORTIZ,<br><br>**Defendant.** | CRIM. NO. 21-192 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court are Defendant Alfredo Ortiz-Ortiz's ("Defendant" or "Ortiz") *Motion to Suppress* ("*Motion*") and the *Amended Report and Recommendation* ("*R&R*") issued by United States Magistrate Judge Marshal D. Morgan. (Docket Nos. 23 and 83, respectively). The Magistrate Judge recommends that the Defendant's *Motion* be denied in part and granted in part. (Docket No. 83). The United States of America (the "Government") timely filed a *Partial Objection* ("*Objection*") to the *R&R*. (Docket No. 85). Having reviewed the record *de novo*, the Court **ADOPTS** the *R&R*.

### I. PROCEDURAL BACKGROUND

On May 26, 2021, a Grand Jury returned a one-count indictment charging Defendant with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). (Docket No. 8). On March 8, 2022, Mr. Ortiz filed his *Motion*, seeking

suppression of evidence found in his vehicle, statements he made during an interrogation, and information seized from various cell phones. (Docket No. 23). The Government responded to the *Motion*, which was referred to Magistrate Judge Morgan for an *R&R*. (Docket Nos. 28 and 45). The Magistrate Judge held a suppression hearing over the course of three sessions, on January 18, 2023; January 20, 2023; and February 7, 2023. (Docket Nos. 49, 51, and 53).

Having heard the evidence, the Magistrate Judge ordered supplemental briefing, which was filed by the Defendant on April 30, 2023, and by the Government on August 2, 2023. (Docket Nos. 66 and 72, respectively). Subsequently, the Magistrate Judge issued a thorough and well-analyzed *R&R*. (Docket No. 83).[1] The Magistrate Judge recommended that the Court deny the *Motion* as to: (1) evidence seized from the vehicle, because Mr. Ortiz failed to establish he had standing; and (2) evidence seized from the cell phones, because Defendant did not meet his burden to be granted a hearing pursuant to Franks v. Delaware, 438 U.S. 54 (1978). (Docket No. 83 at 18). The Magistrate Judge further recommended that Mr. Ortiz's statements to investigators from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") be suppressed because

---

[1] The Magistrate Judge first issued a *Report and Recommendation* on December 18, 2023. (Docket No. 76). Pursuant to a request from the Government to reconsider or clarify select sentences, the Magistrate Judge then issued the Amended *R&R* that is now before the Court. (Docket Nos. 79, 82, and 83).

interrogation after he had invoked his right to counsel violated the rule from Miranda v. Arizona, 394 U.S. 436 (1966). (Docket No. 83 at 23). After requesting and receiving an extension of time, the Government timely filed its *Objection* to this last ruling on January 24, 2024. (Docket No. 85). Defendant filed neither objections to the *R&R* nor a response to the Government's *Objection*.

## II.   FACTUAL BACKGROUND

The Court reviewed the entire record in this case, which includes the transcripts from the evidentiary hearing and the exhibits, including the various Advice of Rights forms signed by the Defendant and the recording of his custodial interview. The Magistrate Judge provided a thorough recitation of the facts in this case in the *R&R*. (Docket No. 83 at 3-17). Because the only contested issue before the Court is whether Mr. Ortiz invoked his right to counsel, only the facts pertinent to this issue are discussed in this opinion.

On May 20, 2021, at around 4:00 pm, Sergeant Pedro L. Ramos-Adorno ("Sgt. Ramos") of the Puerto Rico Police Department ("PRPD") saw the Defendant driving a stolen vehicle and arrested him. (Docket No. 57 at 25, 35). Sgt. Ramos orally advised Mr. Ortiz of his Miranda rights and asked him some questions about the vehicle, to which Defendant responded. Id. at 35-36 and 73-74. Mr. Ortiz was then taken to the Drugs Division of the PRPD in Manatí. Id. at

Criminal No. 21-192 (RAM)                                           4

---

41-42. There, Sgt. Ramos again advised Defendant of his <u>Miranda</u> rights in Spanish using a PRPD Advice of Rights form ("PRPD Form"). <u>Id.</u> at 47-48. The PRPD Form[2] reads as follows:

**WARNINGS FORM FOR SUSPECTS IN CUSTODY**
(ANYTIME BEFORE STARTING OR RESUMING QUESTIONING)

| WARNINGS |
|---|
| You have the right to remain silent and refuse to answer questions. |
| Anything you say may be used against you in a court of law. |
| You have the right to consult an attorney before speaking to a Police officer and to have an attorney present during your questioning now or in the future. |
| If you wish for an attorney but cannot afford one, one will be provided to you before any questioning. |
| If you decide to answer questions now without an attorney present, you will still have the right to stop answering at any time until you talk to an attorney. |
| Knowing and understanding your rights as I have explained them to you, are you willing to answer questions without an attorney present? |

**SUSPECT'S STATEMENT AS TO HIS/HER CONSENT TO BE QUESTIONED**

Instructions: complete the information requested below and select one of the options provided below by writing an X on the square (☐) in the presence of a witness and the Police officer.

---

[2] The original form is in Spanish. (Docket No. 28-2). An English translation was also filed on the docket and submitted as an exhibit during the suppression hearing. (Docket Nos. 28-1 and 57 at 48).

Criminal No. 21-192 (RAM)                                              5

>   I _____ (full name in print) of ___ years of age here by certify that on today's date the aforementioned warnings were read and explained to me, and that
>
>   I ☐ **exercised** / ☐ **did not exercise** (please mark the choice with an X) the right to read them by myself.
>
>   ☐ I understand the rights that those warnings bestow upon me and I **voluntarily waive** the same with the knowledge that I can stop being questioned and/or invoke my right to an attorney at any time. The waiver of these rights has been voluntary without coercion, intimidation, violence, pressure, or promises.
>
>   ☐ I understand the rights that those warnings bestow upon me and I decided **TO NOT waive** the same.

(Docket No. 28-1) (emphases in original). Sgt. Ramos read the rights to Mr. Ortiz, who did not ask any questions. (Docket No. 57 at 49). Mr. Ortiz first marked the box indicating that he chose to waive his rights. Id. Sgt. Ramos commenced asking questions about the stolen vehicle. Id. at 50. Mr. Ortiz then said that "he wasn't going to testify anything," scratched out the box, initialed it, and marked the box below it that indicated he would **not waive** his rights. Id. at 50, 89. The form is signed, witnessed by Sgt. Ramos and another PRPD officer, and dated 5:20 pm on May 20, 2021. (Docket No. 28-1). Sgt. Ramos then stopped questioning Mr. Ortiz. (Docket No. 57 at 51).

Criminal No. 21-192 (RAM)                                                 6

    PRPD Agent Alvin Candelario-Melendez ("Agent Candelario") was called to the Manatí Drugs Division to assist Sgt. Ramos with the stolen vehicle investigation. (Docket No. 59 at 354-55). Agent Candelario conducted an inventory search of the vehicle and prepared a property receipt form to document what had been found. Id. at 355. He also presented Mr. Ortiz with a second PRPD Advice of Rights form, id. at 356, which was identical to the PRPD Form that Defendant had already signed. (Docket No. 83 at 8). Mr. Ortiz read the PRPD Form, placed initials next to each of the warnings and rights listed at the top of the form, then checked the box indicating that he had decided to not waive his rights. (Docket No. 59 at 353, 361). The form is signed, witnessed by only Agent Candelario, and dated 7:10 pm on May 20, 2021. Id. at 360. Defendant did not ask any questions, express that he wanted to speak to an attorney, or state that he wanted a lawyer during questioning. Id. at 364. He did tell Agent Candelario that he did not want to answer questions, and the interview ended. Id. at 366.

    ATF Special Agent Jorge Escribano-Rossy ("SA Escribano") was called to respond to a duty call from the Manatí PRPD precinct that same day. (Docket No. 57 at 97). He testified that upon arriving, he asked Sgt. Ramos if Miranda warnings had been read to Mr. Ortiz, and Sgt. Ramos responded affirmatively. Id. After asking the Defendant for basic biographical information, SA Escribano

Criminal No. 21-192 (RAM)                                                        7

read Miranda warnings in Spanish from an ATF Advice of Rights form ("ATF Form"). Id. at 98-99. The ATF Form[3] reads as follows:

> **Notice of Rights**
> - You have the right to remain silent.
> - Anything you say may be used against you in legal procedure.
> - You have the right to speak with an attorney before we ask you any questions and to have him present with you during the questions.
> - If you do not have the money to employ an attorney, one may be provided to you before we ask you any questions.
> - If you decide to answer our questions at this time without having an attorney present, you will always have the right to stop answering when you wish.
>
> **Waiver**
> I have read this statement of my rights or it has been read to me, and I understand my rights. At this time, I am willing to answer the questions without having an attorney present. I have been made no promises, nor has pressure or force of any kind been used against me.

(Docket No. 28-3). Defendant stated that he understood his rights. (Docket No. 31-2). SA Escribano testified that he then provided the ATF Form to Mr. Ortiz. (Docket No. 57 at 100). Pursuant to the transcript of the interview, SA Escribano then says: "Can you sign here? Okay. You're going to put your initials on each point." Id. at 106. Defendant further was told to sign and print his name. Id.

---

[3] The original form is in Spanish. (Docket No. 28-4). An English translation was also filed on the docket and submitted as an exhibit during the suppression hearing. (Docket Nos. 28-3 and 57 at 99).

The ATF Form is dated 8:59 pm[4] on May 20, 2021, which was "more or less" when SA Escribano and the two other ATF Task Force Officers present commenced questioning. (Docket No. 57 at 98, 100-01). Mr. Ortiz did not indicate that he wanted to speak to a lawyer at this time. Id. at 101. During the interview that followed, Defendant made statements that he now seeks to suppress.

### III. APPLICABLE LAW

**A. The Fifth Amendment Right to Counsel**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Indispensable to the Fifth Amendment privilege is the right to have counsel present at a custodial interrogation. Miranda, 394 U.S. at 469. Accordingly, individuals who are taken into custody and subject to questioning by law enforcement must be given a warning about the right to an attorney, among other rights. Id. at 479. A suspect may waive the Miranda rights and consent to an interrogation, but the waiver must be voluntary, knowing, and intelligent. *See* Edwards v. Arizona, 451 U.S. 477, 484 (1981). The district court "must start with a presumption that the suspect did not waive his rights," and the

---

[4] The English translation of the ATF Form lists the time as 8:39 pm, but the handwriting on the original, Spanish version of the ATF Form and SA Escribano's testimony both indicate that the time was 8:59 pm.

Criminal No. 21-192 (RAM)                                              9

government bears the burden of proving waiver by a preponderance of the evidence. United States v. Carpentino, 948 F.3d 10, 26 (1st Cir. 2020).

However, "[i]f the suspect invokes his right to counsel at any point during the interrogation, all questioning must cease either until an attorney is present or until the suspect initiates further communication with the officers." Id. at 20 (citing Edwards, 451 U.S. at 484). The invocation of the right to an attorney must be unambiguous. Davis v. United States, 512 U.S. 452, 459 (1994). "[O]nce a suspect has invoked the right to counsel, knowledge of that request is imparted to all law enforcement officers who subsequently deal with the suspect." United States v. Porter, 764 F.2d 1, 7 (1st Cir. 1985) (citations and internal quotation marks omitted). This rule is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights." Michigan v. Harvey, 494 U.S. 344, 350 (1990).

**B. Standard of Review**

The Court may refer certain motions, including motions to suppress evidence, to a Magistrate Judge for a *R&R*. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1); *see also* L. CV. R. 72(a). A party may file written objections to the report within

fourteen days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2).

A district court "shall make a *de novo* determination of those portions of the [*R&R*] to which objection is made," and "may accept, reject, or modify" the *R&R*. 28 U.S.C. § 636(b)(1)(C) (italics added); *see also* L. CV. R. 72(d). The district judge's review need only evaluate the disputed portions of the *R&R*. United States v. J.C.D., 861 F.3d 1, 6 (1st Cir. 2017) (citing Gioiosa v. United States, 684 F.2d 176, 179 (1st Cir. 1982)). Moreover, parties that advance new theories for the first time in objections to an *R&R* waive those arguments. United States v. Mendoza-Maisonet, 962 F.3d 1, 16-17 (1st Cir. 2020) (citing United States v. Rosado-Cancel, 917 F.3d 66, 69 (1st Cir. 2019)).

## IV. DISCUSSION

The only question before the Court is whether Mr. Ortiz invoked his right to counsel when he placed an "X" before the statement: "I understand the rights that those warnings bestow upon me and I decided **TO NOT waive** the same." The Government claims that the Defendant did not affirmatively, clearly, and unambiguously invoke his right to counsel by doing so. (Docket No. 85 at 7). However, the Court finds that the Defendant did invoke his right to counsel and his subsequent statements to the ATF agents must be suppressed for the following reasons.

The threshold inquiry of whether a suspect invoked the right to counsel is "an objective one." James v. Marshall, 322 F.3d 103, 108 (1st Cir. 2003). Thus, "the statement must be such that 'a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" United States v. Oquendo-Rivas, 750 F.3d 12, 19 (quoting Davis, 512 U.S. at 459; Obershaw v. Lanman, 453 F.3d 56, 64 (1st Cir. 2006)).

A defendant must "affirmatively invoke[]" the right to counsel. Davis, 512 U.S. at 461. The request must be "clear and umambiguous," and unmarred by "ambiquity or equivocation." Oquendo-Rivas, 750 F.3d at 18-19 (citing id. at 459). A "statement either is . . . an assertion of the right to counsel or it is not." Smith v. Illinois, 469 U.S 91, 97-98 (1984) (citations and alteration marks omitted). The First Circuit has yet to decide the issue of whether marking an advice or waiver of rights form constitutes an affirmative invocation of the right to counsel. *Cf.* United States v. Lugo Guerrero, 524 F.3d 5, 11 (1st Cir. 2008) (assuming defendant had not invoked right to counsel when he refused to sign waiver of rights portion of form but not discussing the same). However, at least two other Courts of Appeal have addressed this issue directly. In United States v. Johnson, 400 F.3d 187 (4th Cir. 2005), the Fourth Circuit held that a defendant who initialed and checked "no" in response to the question "[d]o

Criminal No. 21-192 (RAM)                                      12

you want to make a statement at this time without a lawyer" made a clear and unequivocal request for counsel even though the government-provided form was itself unclear. Id. at 194-97. Similarly, in United States v. Scott, 693 F.3d 715 (6th Cir. 2012), the Sixth Circuit found that a defendant who wrote "no" in response to the question "[h]aving these rights in mind, do you wish to talk to us now?" also had invoked his right to counsel. Id. at 719.

By contrast, refusing to sign a waiver form is not an invocation of the right to counsel. *See* United States v. Plugh, 648 F.3d 118, 125-26 (2d Cir. 2011) (finding defendant who refused to sign a waiver of rights form had not invoked); United States v. Thurman, 889 F.3d 356, 365 (7th Cir. 2018) (concluding refusal to sign waiver form goes to the issue of the voluntariness of the waiver). Nor is an inconsistent response on an advice of rights form sufficient to establish invocation. *See* United States v. Brown, 287 F.3d 965, 970 n.2, 972-73 (10th Cir. 2002) (holding defendant who answered "yes" to the questions "Keeping your rights in mind, do you wish to answer questions now without a lawyer present?"; "Do you want a lawyer?"; and "Do you want to talk to a

lawyer?" had provided ambiguous responses that did not invoke the right to counsel).[5]

Here, Defendant's mark on the PRPD Form is an affirmative, unambiguous invocation of his right to counsel. Unlike the defendant in Oquendo-Rivas, who wrote on the ATF Form "I do not understand this, my lawyer speaks," in what the First Circuit deemed was an ambiguous invocation, 750 U.S. at 15, 18, Mr. Ortiz clearly indicated that he did not want to waive his Miranda rights **not once, but twice**. Moreover, the PRPD Form's non-waiver language is similar in structure to the language at issue in Scott. The Scott court found that the defendant's "'no' response is related directly to 'these rights,' which include the right to have counsel present while answering questions." Id. 693 F.3d at 719. The statement at issue here is "I understand the rights that those warnings bestow upon me and I decided **TO NOT waive** the same." Given the layout of the form, "those warnings" refers to the Miranda warnings and includes the right to counsel, as does the term "the same." Like the defendant in Scott, Mr. Ortiz's marking of the non-waiver option invoked the right to counsel because the language

---

[5] Although the form in Brown could risk a potentially inconsistent set of answers, it is a waiver of rights form that allows a defendant to "explicitly request[] an attorney []or the option of simply stating he did not want to make a statement at the time." Johnson, 400 F.3d at 196 (citing favorably to the Brown form and suggesting it is a kind of form "routinely used by law enforcement authorities").

of the statement included all his Miranda rights. *See also* Billups v. State, 762 A.2d 609, 615 (Md. Ct. Spec. App. 2000) ("There cannot be a more unambiguous response to a written waiver than a written, unconditional 'no.'"). Both Sgt. Ramos and Agent Candelario also independently understood that their questioning had to end once Mr. Ortiz checked the box on the two PRPD Forms indicating he would not waive his rights.[6]

Although the Government points to the fact that the form itself has the language "TO NOT waive" and that non-waiver is different than invocation, this argument is unavailing. It is true that the Supreme Court has indicated that non-waiver may be different than invocation. *See* Berghuis v. Thompkins, 560 U.S. 370, 388 (2010) ("[A]fter giving a Miranda warning, police may interrogate a suspect who has neither invoked nor waived his or her Miranda rights"); *see also* Plugh, 648 F.3d at 125 (discussing the "middle ground" between waiver and invocation). In support of its proposition, the Government also cites to Smith, 469 U.S at 98, in which the Supreme Court wrote that "[i]nvocation and waiver

---

[6] "[W]hen a suspect makes an ambiguous or equivocal statement[,] it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." Davis, 512 U.S. at 461. Though police officers are not required by Supreme Court precedent to clarify ambiguities, *see* id., "[l]aw enforcement officers working in teams should be discouraged from violating the accused's constitutional rights by **failing to ascertain or advise another whether those rights had been previously asserted.**" United States v. Downing, 665 F.2d 404, 407 (1st Cir. 1981).

Criminal No. 21-192 (RAM)                                              15

are entirely distinct inquiries, and the two must not be blurred by merging them together." Id. However, the Government misreads Smith's holding: invocation and waiver must be analyzed separately because a court cannot use the post-invocation responses of the accused, which may have been solicited through "badger[ing] or overreaching," to cast doubt on the invocation itself. Id. at 98-99 (internal quotation marks omitted; alteration in original); *see also* United States v. Cheely, 36 F.3d 1439, 1447 (9th Cir. 1994) (defendant who unequivocally refused to waive right to counsel, either orally or in writing, had invoked the right).

Moreover, because the Court agrees with the *R&R*'s recommendation that checking the non-waiver box is an invocation, it need not consider the ramifications of non-waiver. Just because the language of the PRPD Form includes the term "TO NOT waive" does not strip the statement of its invocatory ability. As shown by the difference between the PRPD Form and the ATF Form, as well the forms in Johnson, Scott, and Brown, the Government can and has drafted advice of rights forms in myriad ways. In fact, the ATF Form does not even have a non-waiver option. To the extent that the PRPD has chosen to include additional options on its form, the Government must honor their meaning. And even though the Government claims the non-waiver statement is ambiguous,

>           the ambiguity should arguably be interpreted
>           against the author of that provision—the
>           State. No discernable public interest is
>           served by interpreting a purportedly ambiguous
>           waiver of rights provision in favor of the
>           party who, either intentionally or
>           unintentionally, inserted the ambiguity in the
>           provision in the first place.

Johnson, 400 F.3d at 196 (quoting Billups, 762 A.2d at 615-16); see also Scott, 693 F.3d at 720 ("If there is any ambiguity about [defendant's] right to counsel, it is in the form itself, and not in his invocation of the right"). In the context of other criminal matters, ambiguities are also construed against the drafting party. See United States v. Sanchez-Colberg, 856 F.3d 180, 184 (1st Cir. 2017) (construing plea-agreement ambiguity against the government). The Government has "greater bargaining power and more expertise" when drafting. United States v. Newbert, 504 F.3d 180, 188 (1st Cir. 2007) (Boudin, C.J., concurring). Thus, even when it inserts language that it claims helps the defendant, where that language "muddles the meaning . . . the interpretation issue can reasonably be resolved against the government." Id.

Finally, several judges in this district have reached the same conclusion that making a mark on the appropriate portion of the PRPD Form is an invocation of the Miranda rights. See United States v. Fernández-Santos, 2024 WL 510283, at *8 (D.P.R. 2024) (defendant presented with PRPD Form and federal advice of rights

Criminal No. 21-192 (RAM)                                              17

form at the same time had invoked right to counsel); United States v. Soler-Muñiz, No. 19-cr-247, slip op. at 7-8 (D.P.R. March 5, 2020) (McGiverin, M.J.), *R&R neither adopted nor rejected*, (collecting cases equating non-waiver with invocation and holding that defendant who checked non-waiver box on PRPD form had invoked right to counsel); *see also* United States v. Cintron-Ortiz, 2023 WL 3719630, at *6 (D.P.R. 2023) (López-Soler, M.J.), *R&R neither adopted nor rejected*, (noting that checking the box rejecting waiver on the PRPD Form coupled with shaking head throughout interview indicated defendant's invocation of right to remain silent). *Contra* United States v. Castro-Santiago, 2020 WL 1042039, at *5 (D.P.R. 2020) ("Though[] [the PRPD Form] employs a double-negative structure, the unfortunate grammar does not render it ambiguous"); United States v. Davila-Rosa, No. 15-cr-214, slip op. at 13 (D.P.R. October 29, 2015) (Carreño-Coll, M.J.), *R&R neither adopted nor rejected*, (finding defendant's choice to not waive rights on PRPD Form is "not the same as an affirmative request that counsel be provided"). The Court notes that the aforementioned cases are a sampling of the many cases arising out of this district describing the same interrogation fact pattern. Specifically, a defendant will indicate on the PRPD Form that he does not wish to waive his rights, and later will waive his rights when he is

presented with a second—or in this case, third—form from a federal government entity.

The Court concludes that Mr. Ortiz invoked his right to counsel by marking the portion of the PRPD Form indicating he did not want to waive his Miranda rights. There is no dispute that an attorney was not provided to the Defendant and the subsequent interactions with law enforcement were not initiated by the Defendant. Accordingly, all of Defendant's statements from his interrogation by ATF agents must be suppressed.

## V.   CONCLUSION

After a *de novo* review, the Court finds that Magistrate Judge Morgan's extensive analysis and conclusions are well supported. Therefore, the *Report and Recommendation* is **ADOPTED** *in toto* and, in accordance with the Magistrate Judge's recommendation, the Defendant's *Motion to Suppress* at Docket No. 23 is **GRANTED IN PART** and **DENIED IN PART.** The Government's *Objections* to the *Report and Recommendation* at Docket No. 83 are **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of February 2024.

s/Raúl M. Arias-Marxuach  
UNITED STATES DISTRICT JUDGE